IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Susan Notaro and Vincent Fayock,    :
                              Appellants  :
                                        : No. 571 C.D. 2022
                v.                    : Submitted: April 28, 2023
                                        :
Hazleton City Zoning Hearing Board,  :
John Caputo, and Kathryn Caputo    :


BEFORE:   HONORABLE ANNE E. COVEY, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE STACY WALLACE, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WALLACE                        FILED: September 26, 2023


     Susan Notaro and Vincent Fayock (Objectors) appeal from the April 26, 2022 order of the Court of Common Pleas of Luzerne County (Common Pleas) denying their appeal of the October 21, 2019 decision of the Zoning Hearing Board (Board) of Hazleton City (City), which granted John Caputo's and Kathryn Caputo's (collectively, the Caputos) application for a special exception to construct four garden apartment buildings on a property they own in the City (the Property). On appeal, Objectors argue the Board violated the Sunshine Act[1] by voting on the Caputos' two separate proposals outside of a public meeting and the Board abused

---

[1]  65 Pa.C.S. §§ 701-716.

its discretion in calculating the available density for a second principal use. Upon review, we affirm.

## I. Background

On June 24, 2019, the Caputos submitted a zoning permit application to the City for the construction of four garden apartment buildings, each containing six apartment units, on the Property. Reproduced Record (R.R.) at 157a-62a. The City's Zoning Officer (Zoning Officer) denied the Caputos' application, reasoning that the City's Zoning Ordinance (Ordinance)[2, 3] required the Caputos to apply for and obtain a special exception for the garden apartments from the Board. *Id.* at 164a-67a. The Caputos then filed a zoning appeal application[4] with the Board, wherein the Caputos appealed the Zoning Officer's determination and requested a special exception for the garden apartments. *Id.* at 168a. The Board then held several hearings on the Caputos' zoning appeal application.

At the Board's first hearing, which it held on August 1, 2019, the Zoning Officer and John Caputo (Mr. Caputo) testified. *See* R.R. at 89a. After discussing some issues with the height and positioning of the Caputos' proposed garden apartment buildings, the Board continued the hearing to allow the Caputos to file an amended application. *Id.* at 100a. On August 13, 2019, the Caputos filed an amended application, which contained two separate building height and positioning proposals. *Id.* at 173a-76a.

---

[2] Hazleton City, Pa., Zoning Ordinance (1995), *as amended*.

[3] The Zoning Officer also initially denied the Caputos' application because the Caputos needed to obtain a height variance. R.R. at 164a. By subsequent letter, however, the Zoning Officer explained that a "height variance is not required" under the Ordinance. *Id.* at 166a.

[4] The Zoning Officer provided the Caputos with a form entitled "Zoning Appeal Application," which the Caputos utilized to appeal the Zoning Officer's determination and to apply for a special exception. *See* R.R. at 137a, 168a.

On September 5, 2019, the Board held its second hearing in this matter. R.R. at 104a. Mr. Caputo and the Zoning Officer testified again regarding the Caputos' desired use of the Property and the details of their two proposals. *See id.* at 104a-41a. Mr. Caputo explained that the Property has a total of 124,800 square feet, 21,624 square feet of which is occupied by existing buildings and 10,696 square feet of which the Caputos propose to occupy with the four garden apartment buildings. *Id.* at 110a-11a. Mr. Caputo submitted a density calculation which showed his proposed garden apartments complied with the Ordinance's density requirements. *Id.* at 110a. The Zoning Officer opined that each of the Caputos' two proposals satisfied the Ordinance's requirements, including the density requirements. *Id.* at 133a-41a. The Zoning Officer admitted that Mr. Caputo's density calculation was based off of the entire lot size, including areas that are occupied by existing structures. *Id.* at 137a-38a. Nevertheless, the Zoning Officer explained that the Ordinance permitted the density calculation to include the entire lot size because it is based on total acreage and the Ordinance permits more than one principal use on a single parcel by special exception. *Id.* at 138a. At the conclusion of the September 5, 2019 hearing, the Board's chairman indicated the Board would reconvene on September 19, 2019, to issue a decision. *Id.* at 143a.

On September 19, 2019, a quorum[5] of the Board met to consider this matter. R.R. at 183a. Following an executive session, the Board resumed its public meeting and the Board's chairman moved that the Board approve the Caputos' application for a special exception, subject to several conditions,[6] to construct four garden apartment buildings on the Property. *Id.* at 185a. The motion was seconded, and all

---

[5]  Three Board members were present, while two Board members were absent. R.R. at 183a.

[6]  We need not set forth these conditions in detail, as they are not relevant to the issues Objectors raised on appeal.

present Board members voted in favor of the motion. *Id.* at 185a-86a. The Board did not specify at this hearing that it was only approving one of the Caputos' two proposals for building height and positioning. *Id.*

The Board issued written findings of fact and conclusions of law on October 21, 2019. R.R. at 145a-54a. Relevant to this appeal, the Board concluded the Caputos met the Ordinance's general standards for a special exception, as well as the specific requirements for the garden apartments. *Id.* at 151a-54a. With regard to the density requirement,[7] the Board did not detail which calculation it utilized, but simply noted that "[i]t is the opinion of the [Board] . . . that the density requirement . . . has been met." *Id.* at 153a. The Board approved the Caputos' first proposed option for construction of the garden apartments on the Property, subject to several conditions. *Id.* at 154a.

Objectors appealed the Board's decision to Common Pleas, raising numerous allegations of error in addition to those they raised in this appeal. Common Pleas, which did not take additional evidence in this matter, denied Objectors' appeal. R.R. at 237a-52a. Relevant to this appeal,[8] Common Pleas determined Objectors failed to satisfy their burden of proof to establish the Board violated the Sunshine Act, because the Board voted and made an oral decision at an open meeting. *Id.* at 243a-

---

[7] The density requirement for the garden apartments states that "the maximum number of dwelling units per gross acre of land permitted for this use is fifteen (15)." Ordinance Art. VIII, § 2.21(f).

[8] Objectors did not preserve several of their original allegations of error, because they only addressed the Board's purported Sunshine Act violation and error in calculating the available density in their Brief in this matter. *See* Pa.R.A.P. 2216(a) ("No question will be considered unless it is stated in the [S]tatement of [Q]uestions [I]nvolved or is fairly suggested thereby."); *Kalmeyer v. Mun. of Penn Hills*, 197 A.3d 1275, 1279 n.1 (Pa. Cmwlth. 2018) ("Issues not included in the Statement of Questions [Involved] are waived and need not be considered by the Court even if they are addressed in the argument section of the brief"). Accordingly, we need only discuss Common Pleas' analysis of the two issues Objectors preserved for this appeal.

44a. Concluding the Board's findings did not constitute an error of law or an abuse of discretion, Common Pleas refused to "substitute its judgment for that of the Board" with respect to whether the Caputos had proven they met the Ordinance's density requirements for the garden apartments. *Id.* at 247a.

Objectors appealed Common Pleas' decision to this Court. On appeal, Objectors first argue the Board must have conducted deliberations and decision making in private in violation of the Sunshine Act, because the Board's public vote and determination did not specify which of the Caputos' two proposals the Board was approving, yet its subsequent written decision specified it was approving the Caputos' first proposal. *See* Appellants' Br. at 14-20. Objectors second argument is that the Board abused its discretion by permitting "land already committed to one principle [sic] use to be used in calculating allowable density of a second principal use." *Id.* at 12, 21-27.

## II. Analysis

Since "Common Pleas did not take additional evidence in this zoning appeal," this Court's role "is limited to reviewing the [Board]'s decision, not that of Common Pleas." *Dowds v. Zoning Bd. of Adjustment*, 242 A.3d 683, 695 (Pa. Cmwlth. 2020). Thus, we evaluate whether the Board committed an error of law or abused its discretion. *Id.* With regard to whether the Board committed an error of law, we conduct a *de novo* review and "are not bound by the legal conclusions of the governing body or lower court[]." *EQT Prod. Co. v. Borough of Jefferson Hills*, 208 A.3d 1010, 1025 (Pa. 2019) (citation omitted). With regard to whether the Board abused its discretion, we will find an abuse of discretion "whenever the findings of the governing body are not supported by substantial evidence." *Id.* at 1024. Substantial evidence is "such relevant evidence as a reasonable mind might accept

5

as adequate to support a conclusion." *Gorsline v. Bd. of Supervisors of Fairfield Twp.*, 186 A.3d 375, 385 (Pa. 2018).

## A. Sunshine Act

The party alleging a violation of the Sunshine Act carries the burden of proof to establish a violation. *Kennedy v. Upper Milford Twp. Zoning Hearing Bd.*, 834 A.2d 1104, 1123 (Pa. 2003) (citation omitted). To carry its burden, the party must overcome a "presumption of regularity and legality that obtains in connection with proceedings of local agencies." *Id.*

Objectors argue the Board violated Sections 704 and 705 of the Sunshine Act by deliberating and voting to approve the Caputos' first proposal outside its public meeting. To support their argument, Objectors note that the Board's public vote was to generally approve the Caputos' application, whereas the Board's subsequent written decision approved the first proposal (of two) the Caputos included in their application. Objectors believe the two proposals were essentially two separate applications, and, therefore, the Board needed to vote publicly for each proposal.

Since Objectors rely on Sections 704 and 705 of the Sunshine Act, we begin by examining those sections. Section 704 of the Sunshine Act provides:

> Official action[9] and deliberations[10] by a quorum of the members of an agency shall take place at a meeting open to the public unless closed under section 707 (relating to exceptions to open meetings), 708 (relating to executive sessions) or 712 (relating to General Assembly meetings covered).

---

[9] Section 703 of the Sunshine Act defines an "[o]fficial action" as including "[t]he decisions on agency business made by an agency," and "[t]he vote taken by any agency on any motion, proposal, resolution, rule, regulation, ordinance, report or order." 65 Pa.C.S. § 703.

[10] Section 703 of the Sunshine Act defines "[d]eliberation" as "[t]he discussion of agency business held for the purpose of making a decision." *Id.*

65 Pa.C.S. § 704. Section 705 of the Sunshine Act requires votes at agency meetings to be "publicly cast, and in the case of all roll call votes, recorded." 65 Pa.C.S. § 705. Deliberations of zoning hearing boards "are a proper subject of a private executive session," under Section 708 of the Sunshine Act, because "[a]s an agency characterized predominantly by judicial characteristics and functions, it is particularly appropriate for zoning boards to deliberate privately." *Kennedy*, 834 A.2d at 1115, 1123.

Since the Sunshine Act requires "official action" to be taken at a public meeting, the oral votes of a zoning hearing board constitute the "official action." *See Bruno v. Zoning Bd. of Adjustment of City of Phila.*, 664 A.2d 1077, 1079 (Pa. Cmwlth. 1995). Thus, a zoning hearing board's written decision is not considered an "official action" and does not need to be issued during a public meeting. *Id*. While a written decision "permits appellate courts to perform meaningful review of [a zoning hearing board's] decision," it is the zoning hearing board's oral vote that controls when it conflicts with the zoning hearing board's written decision. *Id*.

Here, the Board complied with the requirements of the Sunshine Act because it publicly voted to approve the Caputos' application for a special exception and recorded each Board member's vote. While the Caputos' application for a special exception included two separate proposals for the Board's consideration, the Board's oral vote approved the Caputos' application generally. Thus, the Board's oral decision gave the Caputos the ability to proceed with whichever option they desired.

Since the Board's oral vote is its official action rather than the Board's later written decision, we need not address whether the Board may have violated the Sunshine Act in developing its written decision. *See Bruno*, 664 A.2d at 1079. Objectors have not presented any evidence to overcome the presumption the Board

7

complied with the Sunshine Act in taking its official action.[11]   Accordingly, we conclude the Board did not violate the Sunshine Act.

## B.    Density

Article VIII, Section 2.21(f) of the Ordinance establishes that "the maximum number of dwelling units per gross acre of land [for the garden apartments] is fifteen (15)."   Ordinance Art. VIII, § 2.21(f).   Objectors argue the Board abused its discretion by approving the Caputos' application since the Caputos used land already devoted to an existing principal use in calculating available density for its garden apartments.  Appellants' Br. at 21.  The Zoning Officer testified that he believed the Caputos' calculation was permissible under the Ordinance because the Ordinance's density calculation is based on gross acres of land and the Ordinance permits more than one principal use on the same parcel by special exception.  R.R. at 138a.  The Board, without endorsing a specific density calculation, determined the Caputos' application met the Ordinance's density requirements.  *Id.* at 153a.

"A zoning hearing board's interpretation of its own zoning ordinance is entitled to great weight and deference[,] . . . because a zoning hearing board, as the entity charged with administering a zoning ordinance, possesses knowledge and expertise in interpreting the ordinance." *City of Hope v. Sadsbury Twp. Zoning Hearing Bd.*, 890 A.2d 1137, 1143 (Pa. Cmwlth. 2006).  Likewise, a zoning officer's interpretation is given weight unless it is clearly erroneous.  *Bethlehem Manor*

---

[11]   Instead, the evidence in this matter supports the Board's oral decision.  The Board expressed concerns at its first hearing regarding the height and building orientation in the Caputos' original application.  The Caputos then submitted an amended application, which included two separate building height and orientation options.  At the Board's second hearing, Mr. Caputo and the Zoning Officer both testified that each of the Caputos' proposals in their amended application complied with the Ordinance.  Thus, generally approving the application would not be unreasonable.

8

*Village, LLC. v. Zoning Hearing Bd. of City of Bethlehem*, 251 A.3d 448, 459 (Pa. Cmwlth. 2021) (citation omitted).

Here, the density requirement specifically refers to gross acres of land. *See* Ordinance Art. VIII, § 2.21(f). Although the Ordinance does not define gross acreage, the word "gross" is commonly defined as "overall total exclusive of deductions." *See* https://www.merriam-webster.com/dictionary/gross (last visited September 25, 2023). Thus, the Zoning Officer's determination that the Board did not need to deduct land from the parcel's overall size in completing its density calculation was not clearly erroneous. Accordingly, we conclude the Board did not abuse its discretion in applying the Ordinance's density calculation for the garden apartments.

### III. Conclusion

For the reasons set forth above, we affirm Common Pleas' order denying Objectors' appeal of the Board's October 21, 2019 decision.

_____
STACY WALLACE, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Susan Notaro and Vincent Fayock,    :
                                Appellants   :
    :
                  v.                    :  No.  571 C.D. 2022
    :
Hazleton City Zoning Hearing Board,   :
John Caputo, and Kathryn Caputo    :

# **O R D E R**

**AND NOW**, this 26th day of September 2023, the April 26, 2022 order of the Court of Common Pleas of Luzerne County is **AFFIRMED**.

_____
STACY WALLACE, Judge